# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 16-214-04 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| TERRY WRIGHT | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is an emergency motion for release to supervised release or home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), or alternatively, a motion for judicial recommendation for release to home confinement, filed by the Defendant, Terry Wright ("Wright"). Record Document 319. The Government opposes Wright's motion. Record Document 323. For the following reasons, Wright's motion is denied.

### I. Background

Wright was employed by Explo, a company located on the property of Camp Minden in the Western District of Louisiana. Explo demilitarized military munitions and resold the recovered energetic material to mining operations. Wright was the Vice-President of Operations, and he oversaw Explo's day-to-day operations, including demilitarization. In October of 2012, there was an explosion at the Explo facilities that caused localized damage and an evacuation of residents within close proximity to the Camp Minden property. It was ultimately discovered that Wright and his co-defendants had been improperly storing explosive material and propellants on the Explo property and submitting false documentation to the United States Army to conceal their conduct. A

1

federal grand jury indicted Wright on thirty counts of various federal crimes, including criminal conspiracy, false statements, and wire fraud.

Wright entered a guilty plea to one count of criminal conspiracy and on November 29, 2018, was sentenced to 60 months' imprisonment, three years of supervised release, and was ordered to pay restitution in the amount of $149,032.80.[1]  He reported to the Bureau of Prison's ("BOP") designated facility on January 14, 2019 and is currently housed at the Federal Correctional Institution in Texarkana, Texas.  Wright's projected release date is April 16, 2023.

Due to COVID-19, Wright seeks a modification of his term of imprisonment to allow him to be released on supervised release or home confinement, pursuant to 18 U.S.C. § 3582(c).  The World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a global pandemic related to the spread of the COVID-19 virus, a strand of the novel coronavirus. The CDC has advised that persons over the age of sixty-five and those with certain underlying medical conditions are considered high risk and are particularly susceptible to contracting the virus.  In light of this pandemic, the President of the United States has declared a national emergency and many governors have declared public health emergencies.  The CDC and all health authorities have strenuously recommended social distancing as a means of limiting community spread of the virus.  On a federal level, the President has advised against any gatherings of groups

---

[1] Wright's motion establishes that restitution has been paid in full.

2

larger than ten people, and that is only when absolutely necessary. Many states, including Louisiana, are subject to stay-at-home orders that are still in place at this time.

The prison population is particularly at risk due to the conditions of confinement, the close contact of inmates, and the inability to maintain social distancing. Responding to this concern, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") "expand[s] the cohort of inmates who can be considered for home release." Pursuant to that provision of the CARES Act, United States Attorney General William Barr issued an April 3, 2020, memorandum instructing the BOP to maximize transfer to home confinement of "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations." See Memorandum from Attorney General William Barr to Director of Bureau of Prisons, *The Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (April 3, 2020), https://www.justice.gov/coronavirus (last visited 4/13/2020). The April 3 memo urged the BOP to undertake its review urgently and assess inmates with high risk factors for COVID-19 who would be appropriate candidates for release. If they are deemed good candidates, the Attorney General instructed the BOP to immediately process the respective inmates and to immediately transfer those inmates to their homes, after a fourteen-day quarantine. The BOP responded to confirm the urgency of the situation and announced that it is reviewing all inmates who satisfy the Attorney General's criteria for release. It has committed additional resources to complete this task as quickly as possible.

In this case, Wright is sixty-six years old and allegedly suffers from idiopathic thrombocytopenic purpura ("ITP") which is an immune disorder "that can lead to easy or excessive bruising and bleeding" due to a difficulty in blood clotting.[2] Wright also states that he had mitral valve replacement and bypass surgery in 2009.[3] He submits that he is considered high risk for contracting or becoming severely ill from COVID-19. Wright did not provide any information on his living conditions at FCI Texarkana, that is, whether he is in a small cell or a large dormitory with other inmates. He also provided no information on the overall health conditions and infection rate at FCI Texarkana. Nonetheless, Wright argues that his age, medical conditions, and the COVID-19 pandemic within a prison setting constitute extraordinary and compelling reasons to warrant his release from BOP. He asks that his sentence be modified to allow him to serve the remainder of his sentence on supervised release or home confinement.

In response, the United States argues that Wright is not entitled to the relief requested because he has failed to exhaust his administrative remedies with the BOP and, therefore, the Court does not have jurisdiction to consider his motion. Even if the Court had jurisdiction, the United States contends that Wright has failed to demonstrate the necessary "extraordinary and compelling reasons" required by the compassionate release statute.

---

[2] See Mayo Clinic, *Immune thrombocytopenia (ITP)*, https://www.mayoclinic.org/diseases-conditions/idiopathic-thrombocytopenic-purpura/symptoms-causes/syc-20352325 (last visited April 23, 2020).

[3] The presentence investigation report reflects the ITP and the heart bypass surgery but does not mention a mitral valve replacement procedure. See Record Document 226.

## II. Law and Analysis.

### A. Exhaustion of Remedies

Wright has filed his motion for a sentence modification under the First Step Act of 2018. He asks the Court to grant him compassionate release per 18 U.S.C. § 3582(c)(1)(A)(i).[4] This allows for the modification of a term of imprisonment upon a finding that certain extraordinary and compelling reasons warrant a reduction in an inmate's sentence. As amended by the First Step Act in December of 2018, the compassionate release provision provides:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

---

[4] It is important to distinguish between the CARES Act, on the one hand, and § 3582 as amended by the First Step Act on the other. The CARES Act was the federal government's comprehensive response to the COVID-19 crisis and certain provisions addressed the release of eligible inmates in the prison population. The CARES Act expanded the BOP's authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement.

Section 3624(c)(2) authorizes the BOP to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c)(2). The CARES Act, in turn, provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement. Thus, home confinement determinations rest with the BOP.

In this case, Wright seeks judicial relief under 18 U.S.C. § 3582, which permits the district courts to reduce a prisoner's term of imprisonment under certain circumstances. Thus, the statute applicable to the Court's analysis here is § 3582, not the CARES Act and its expansion of § 3624(c)(2).

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Although sentence reductions under § 3582 historically could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to allow prisoners to petition the district courts as set forth above. However, as the statute makes plain, prior to filing a motion for release in the district court, a prisoner must first exhaust his administrative remedies either by fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release on his behalf, or by filing the motion with the court after a lapse of 30 days from the date of the warden's receipt of his request for release, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A). The administrative-exhaustion provision is set out in mandatory terms—the district court can

modify a sentence only after the defendant has exhausted administrative remedies. This mandatory language includes no exceptions, equitable or otherwise.

Here, Wright has not alleged that he made a request for compassionate release with his warden, that the request was denied, or that the request has gone unanswered for 30 days. Instead, he concedes that he has not satisfied the statutory exhaustion requirements. Thus, by filing the instant motion, Wright seeks to bypass the governing provisions of the compassionate release statute by having this Court waive the exhaustion prerequisite due to the grave dangers presented by COVID-19. Unfortunately for Wright, the Court has no power to waive the exhaustion requirement. The Supreme Court has stated that "[w]here Congress specifically mandates, exhaustion is required." McCarthy v. Madigan, 503 U.S. 140, 144 (1992), superseded by statute on other grounds as stated in Booth v. Churner, 532 U.S. 731, 740–41 (2001); see also Booth, 532 U.S. at 741 n.6 ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); see generally Ross v. Blake, 136 S. Ct. 1850, 1856–57 (2016) (reviewing the Prisoner Litigation Reform Act ("PLRA") and explaining that "mandatory [statutory] language means a court may not excuse a failure to exhaust"; This is because "a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to."). Thus, because this Court cannot waive the requirement that Wright exhaust his administrative remedies, the Court has no authority to modify his sentence under § 3582.

The Court's finding that, absent exhaustion, it lacks jurisdiction to proceed with this motion is in accord with other Louisiana federal district courts, as well as myriad district courts around the nation who have concluded that the First Step Act exhaustion requirements are mandatory and cannot be waived by the courts. See United States v. McCallister, 2020 WL 1940741 (W.D. La. Apr. 23, 2020); United States v. Collins, 2020 WL 1929844 (W.D. La. Apr. 20, 2020); United States v. Reeves, 2020 WL 1816496 (W.D. La. Apr. 9, 2020); United States v. Perdigao, 2020 WL 167322 (E.D. La. Apr. 2, 2020); and United States v. Clark, 2020 WL 1557397 (M.D. La. Apr. 1, 2020). Moreover, to date, only one appellate court has considered the matter directly, and it too agrees that exhaustion is mandatory. In United States v. Raia, 2020 WL 16479221, *2 (3d Cir. Apr. 2, 2020), the Third Circuit held that the courts have no authority to grant § 3582 relief to a prisoner in the absence of exhaustion. Accordingly, this Court cannot forgive Wright's failure to exhaust, and without exhaustion, the Court lacks jurisdiction over his motion. [5]

---

[5] The Court notes that in a recent case involving an injunction issued in a prisoner class action suit alleging Eighth Amendment violations due to conditions of confinement during the coronavirus pandemic, the Fifth Circuit found, in part, that the plaintiffs had failed to exhaust administrative remedies under the PLRA. Valentine v. Collier, —F.3d—, 2020 WL 1934431, at *5-6 (5th Cir. Apr. 22, 2020). In a concurring opinion, Judge Higginson commented that the court's PLRA reasoning did not necessarily "foreclose federal prisoners from seeking relief under the First Step Act's provisions for compassionate release. . . .Though that statute contains its own administrative exhaustion requirement, several courts have concluded that this requirement is not absolute and that it can be waived by the government or by the court, therefore justifying an exception in the unique circumstances of the COVID-19 pandemic." Id. at *8. In support of this statement, the concurrence cited two cases from the Southern District of New York. The concurrence's observations, though well-taken, do not persuade this Court to follow suit and break stride with the large majority of district

B.     Extraordinary and Compelling Reasons

Even assuming Wright exhausted his administrative remedies, the Court would nonetheless deny his motion because he has failed to demonstrate extraordinary and compelling reasons to warrant his release. Section 3582(c)(1)(A) would permit a reduction in Wright's term of imprisonment, subject to consideration of the § 3553(a) factors, if he had exhausted his remedies and the Court determined that extraordinary and compelling reasons warranted a reduction. The reduction, however, must be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

Turning to the Guidelines, U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), explains that a reduction is authorized when the court determines that extraordinary and compelling reasons exist and the defendant is not a danger to the safety of any other person or the community. Under § 1B1.13 Application Note 1, the following are deemed extraordinary and compelling reasons: (1) defendant's

---

courts nationwide, as well as the Third Circuit, who have found that exhaustion is mandatory and cannot be waived.

medical condition;[6] (2) defendant's age;[7] (3) family circumstances;[8] or (4) other reasons. U.S.S.G. § 1B1.13, App. Note 1. "Other reasons" is a catchall category defined as "extraordinary and compelling reasons other than, or in combination with" medical condition, age, or family circumstances as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, App. Note 1(D).

The Court finds that Wright has failed to present evidence of extraordinary and compelling reasons to modify his prison sentence. Indeed, he does not meet any of the criteria set forth by the statute. Wright is not terminally ill; is not suffering from a serious physical or medical condition; is not suffering from a serious functional or cognitive impairment; is not experiencing deteriorating physical or mental health because of the aging process; has not served seventy-five percent of his sentence; and is not experiencing dire family circumstances. It is clear Wright relies on the catchall provision which requires proof of extraordinary and compelling circumstances, but he has failed to make a sufficient showing to garner the requested relief.

---

[6] The defendant must be suffering from a terminal illness, or (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or (3) deteriorating physical or mental health because of the aging process, which substantially diminishes the defendant's ability to provide self-care in the prison environment and from which the defendant is not expected to recover. U.S.S.G. § 1B1.13, App. Note 1(A).

[7] Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. U.S.S.G. § 1B1.13, App. Note 1(B).

[8] Family circumstances require the death or incapacitation of the caregiver of the defendant's minor child or children or the incapacitation of the defendant's spouse or registered partner where the defendant is the only available caregiver for him or her. U.S.S.G. § 1B1.13, App. Note 1(C).

The only statement Wright made in support of his claim of extraordinary and compelling circumstances is that "[t]hese are extraordinary times in our country, and there can be no more compelling reason to reduce or modify a sentence than to preserve a life." Record Document 319-1, p. 4. This blanket legal conclusion, even with anecdotal and statistical evidence from various sources in the nation, falls far short of meeting the requisite legal standard. Most importantly, the circumstances noted by Wright are not unique to him, but rather are faced by all prisoners.

A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person. The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner.[9]

---

[9] The only appellate court to have addressed this issue concurs with this Court's conclusions. In Raia, despite acknowledging that COVID-19 presents a considerable threat to the health of federal inmates, the Third Circuit nonetheless explained that "the

In the instant case, Wright alleges he is particularly susceptible to suffering severe illness from COVID-19 because of his age and his medical condition. Wright is sixty-six years old, and thus satisfies the CDC's age-related guidance on who is generally at an elevated risk of severe illness with COVID-19. See Ctr. for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited April 18, 2020). However, Wright's age, alone, does not constitute an extraordinary and compelling circumstance warranting compassionate release.

As to Wright's health, he suffers from ITP and had two cardiac procedures performed eleven years ago. In support of his motion, Wright does little more than define ITP for the Court. He has provided no explanation of how ITP impacts him on a daily basis; to what extent, if any, his immune system is compromised by this disease; what medications, if any, Wright takes on a daily basis to control this disease; what limitations are imposed by this disease; or whether the CDC's guidance includes ITP as a serious

---

mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive professional efforts to curtail the virus's spread." Raia, 2020 WL at *2. The Third Circuit added that the "BOP's shared desire for a safe and healthy prison environment" and "the Attorney General's directive that [the] BOP 'prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic' " only highlighted the BOP's seriousness in handling the present crisis and the value of requiring inmates to first exhaust administrative remedies. Id.

underlying condition worthy of the high-risk classification. Thus, Wright has failed to prove that his ITP constitutes a compelling and extraordinary circumstance.

As to his two prior heart procedures, health authorities have warned that those with serious heart conditions are at greater risk of severe illness with COVID-19. See id. However, once again, Wright has not provided any context for the Court to evaluate the current seriousness of those past procedures. Wright has not alleged that these past cardiac issues have caused his medical condition to deteriorate; that he faces limitations because of these past issues; what medications, if any, he takes for these past conditions; or the effect these conditions have had on his overall cardiac health. There is no medical documentation—from within the BOP or otherwise—to shed light on Wright's current medical condition. In short, Wright has not provided the critical medical information and specificity necessary to evaluate his medical condition. As such, the Court must find that Wright has failed to establish that his heart procedures constitute a compelling and extraordinary circumstance.

The fact that Wright is housed at FCI Texarkana further supports a denial of his motion. At this time, there are no reported cases of COVID-19 at FCI Texarkana. And, if an outbreak were to occur, Wright has not shown that FCI Texarkana would be unable to manage it or that the institution's medical personnel would be unable to adequately treat him. General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.

In short, Wright has failed to satisfy his burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute. Although the Court does not wish to minimize the significance of this outbreak or the risks that face those within the prison population, the Court does not have carte blanche to release whomever it chooses. Instead, it is up to each defendant to demonstrate how his release is appropriate under the statutory framework to which the Court must adhere. Unfortunately for Wright, he has not done so.

Accordingly, Wright's motion for release [Record Document 319] is **DENIED WITHOUT PREJUDICE** for lack of jurisdiction. Wright may reurge his motion after he has properly exhausted administrative remedies. The Court declines to make a judicial recommendation that the BOP release Wright. In general, the BOP is in the best position to assess the inmates within its facilities to determine whether they are appropriate candidates for release under the current guidance. Absent extenuating circumstances not already raised in this briefing, the Court will not interfere with the BOP's process unless and until Wright has provided the BOP with the opportunity to make its initial determination.

**THUS DONE AND SIGNED** this 24th day of April, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE

14